In re GENERAL GROWTH
PROPERTIES, INC.,
et al., Debtors.

No. 09–11977 (ALG).

United States Bankruptcy Court,
S.D. New York.

May 14, 2009.

*FINAL ORDER APPROVING DEBT-
ORS' MOTION TO (I) HONOR
TENANT OBLIGATIONS AND (II)
AUTHORIZE FINANCIAL INSTI-
TUTIONS TO HONOR RELATED
CHECKS AND TRANSFERS*

ALAN L. GROPPER, Bankruptcy
Judge.

Upon the motion, dated April 16, 2009
(the *"Motion"*)[1] of South Street Seaport
Limited Partnership, its ultimate parent,
General Growth Properties, Inc. (*"GGP"*),
and their debtor affiliates, as debtors and
debtors in possession (collectively, *"Gener-
al Growth"* or the *"Debtors"*) for the
entry of interim and final orders, pursuant
to sections 105, 363(b), and 503(b) of title
11 of the United States Code (the *"Bank-
ruptcy Code"*), authorizing the Debtors to
(i) honor Tenant Obligations and (ii) au-
thorize financial institutions to honor relat-
ed checks and transfers, all as more fully
described in the Motion; and upon consid-
eration of relief requested in the supple-
ment to the Motion, dated April 29, 2009
(the *"Supplement"*) regarding Amend-
ments to Property Documents; and the
Debtors having filed, on May 6, 2008, their
Debtors' Omnibus Reply to Objections to
Debtors' Motions for Approval of Debtor
in Possession Financing, use of Cash Col-
lateral and Cash Management System (the
*"Omnibus Reply"*); and the Court having

jurisdiction to consider the Motion, the
Supplement and the Omnibus Reply and
the relief requested therein in accordance
with 28 U.S.C. §§ 157 and 1334 and the
Standing Order of Referral of Cases to
Bankruptcy Judges of the District Court
for the Southern District of New York,
dated July 19, 1984 (Ward, Acting C.J.);
and consideration of the Motion; the Sup-
plement and the Omnibus Reply and the
relief requested therein being a core pro-
ceeding pursuant to 28 U.S.C. § 157(b);
and venue being proper before this Court
pursuant to 28 U.S.C. §§ 1408 and 1409;
and due and proper notice of the Motion
the Supplement and the Omnibus Reply
having been provided to: (i) the Office of
the United States Trustee for the South-
ern District of New York (Attn: Greg M.
Zipes); (ii) proposed counsel to the official
committee of unsecured creditors; (iii) the
Securities and Exchange Commission; (iv)
the Internal Revenue Service; (v) EuroH-
ypo AG, New York Branch, administrative
agent for the lenders to certain of the
Debtors under (a) the Second Amended
and Restated Credit Agreement dated as
of February 24, 2006 and (b) the Loan
Agreement, dated as of July 11, 2008, as
amended; (vi) Deutsche Bank Trust Com-
pany Americas, as administrative agent for
the lenders to certain of the Debtors under
certain Loan Agreements, dated as of Jan-
uary 2, 2008 and February 29, 2009, re-
spectively; (vii) Goldman Sachs Mortgage
Company, as administrative agent for the
lenders to certain of the Debtors under the
Amended and Restated Credit Agreement,
dated as of November 3, 2008; (viii) Wil-
mington Trust, FSB, as indenture trustee
under (a) that certain Indenture, dated as
of May 5, 2006, and (b) that certain Inden-
ture, dated as of April 16, 2007; (ix) La-
Salle Bank National Association and Wil-

---

1. Capitalized terms used and not otherwise
defined herein shall have the meanings as-
cribed to them in the Motion or the Supple-
ment, as the case may be.

mington Trust, FSB,[2] as indenture trustee under that certain Junior Subordinated Indenture, dated as of February 24, 2006; (x) The Bank of New York Melon Corporation, as indenture trustee under that certain Indenture, dated as of February 24, 1995; (xi) those creditors holding the 100 largest unsecured claims against the Debtors' estates (on a consolidated basis); and (xii) parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and the Court having determined that the relief requested in the Motion and the Supplement are in the best interests of the Debtors, their creditors, and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion, the Supplement and the Omnibus Reply establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that, pursuant to sections 105(a), 363(b), and 503(b)(1) of the Bankruptcy Code, the relief requested in the Motion, as supplemented, is granted to the extent provided in this Order; and it is further

ORDERED that the Debtors are authorized to continue their prepetition practices with respect to Tenant Obligations and Property Issues, including, but not limited to, (i) the negotiation and entry into postpetition Property Documents, which may provide for Tenant Improvements, and (ii) postpetition Amendments to pre– and postpetition Property Documents, including the satisfaction of any prepetition claims or obligations in connection therewith; and it is further

ORDERED that, except as limited by this Order, the Debtors are authorized, in their sole discretion, to satisfy all prepetition Tenant Obligations in the ordinary course of business through either: (i) a cash payment or (ii) renegotiated, modified, and/or amended lease terms providing for, among other things, a reduced rental rate; and it is further

ORDERED that, except with respect to Amendments in situations where conditions stipulated in a Property Document have given, or will give, the Tenant the right thereunder to early termination or rent reduction on a date certain, the Debtors shall provide written notice (*"Notice"*) to counsel to the official committee of unsecured creditors (the *"Committee"*), of the terms of each individual proposed prepetition Tenant Obligation or Amendment that either:

- Satisfies a prepetition Tenant Obligation in excess of $500,000 through either: (i) a cash payment or (ii) renegotiated, modified, and/or amended lease terms providing for, among other things, a reduced rental rate;
- Provides a Tenant with a reduction of all payments due under the Property Document in excess of $200,000 on an annual basis (as reasonably determined by Debtors); or
- Terminates a Property Document where the Tenant agrees to pay Debtors a termination fee and that termination fee does not exceed the lesser of one year's rent (excluding payments other than rent, such as common area

2. Wilmington Trust, FSB recently entered into an agreement pursuant to which it will assume the indenture trustee assignments of LaSalle Bank National Association. As of the Commencement Date, the trustee assignment with respect to this indenture has not yet been transferred to Wilmington Trust, FSB; however, Wilmington Trust, FSB will succeed LaSalle Bank National Association as indenture trustee for this series of notes upon the transfer of the trustee assignment.

maintenance charges, taxes, etc.) or 50% of the rent (excluding payments other than rent, such as common area maintenance charges, taxes, etc.) due for the remaining term of the Property Document;

and it is further

ORDERED that the Notice to the Committee will be shared only among the Committee's professionals while the Debtors' and Committee's professionals work to establish a sub-committee of Committee members who may receive this information (the *"Sub–Committee"*). If no agreement can be reached between the Debtors' and Committee's professionals regarding this structure and membership of the Sub–Committee, then the Court shall resolve the disagreement; and it is further

ORDERED that the Committee shall have five (5) calendar days from service of a Notice to object to the Amendment(s) or prepetition Tenant Obligation(s) listed on the Notice. Any objection must state in writing the grounds for the objection and be delivered to counsel to the Debtors, Weal, Gosh & Mages LLP, 767 Fifth Avenue, New York, N.Y. 10153 (Attn: Gary T. Holster, Esq. and ADA P. Strophe, Esq.). If the Debtors and the Committee are unable to resolve a Committee objection, the Debtors may not enter into the proposed Amendment or satisfy the proposed prepetition Tenant Obligation without further order from this Court; *provided, however,* that the Debtors shall have the right to seek Court approval regarding the entry into an Amendment or satisfaction of a prepetition Tenant Obligation on an expedited basis; and it is further

ORDERED that, in connection with the relief granted pursuant to this Order and as an additional form of adequate protection to Adequate Protection Parties[3] as described in the Omnibus Reply, the Debtors agree to comply solely with the non-default leasing covenants specified in a Debtor's first mortgage documents with the applicable Adequate Protection Party (collectively, the *"Applicable Mortgage Documents"*) that afford an Adequate Protection Party the express right, under the Applicable Mortgage Document, to consent to or approve of a Debtor's execution and delivery of (a) a postpetition Property Document (a *"New Property Document"*) or (b) a particular postpetition amendment, modification, restatement, or termination of pre– or postpetition Property Document (each an *"Amendment"*) (each New Property Document and Amendment together, a *"Consent Document"*), and the Debtor will not execute and deliver a Consent Document without first obtaining (a) the required consent of the applicable Adequate Protection Party (in accordance with the standards and procedures set forth in the Applicable Mortgage Document without giving effect to any and all events of default thereunder) or (b) a further order of the Court; *provided, however,* that the Debtors shall have the benefit of any "deemed approval" provisions included in an Applicable Mortgage Document with respect to Consent Documents; *provided, further, however,* that nothing in this Order shall require the Debtors to obtain the consent or approval of an Adequate Protection Party if such consent or approval is not expressly required under an Applicable Mortgage Doc-

---

**3.** *"Adequate Protection Parties"* means holders of claims against any of the Debtors, which claims are secured in any real property of a Debtor whose cash constitutes cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, and whose cash the Debtors use, and, as such, are entitled to adequate protection of their interests in their respective prepetition collateral pursuant to sections 361 and 363(e) of the Bankruptcy Code.

ument or require any consent or approval of any other non-leasing covenants or rights under an Applicable Mortgage Document, included, but not limited to, alteration rights; and it is further

ORDERED that in connection with, and in exchange for, the Debtors' compliance with leasing covenants as to Consent Documents, if an Adequate Protection Party fails to timely honor a request by the Debtors for execution of (i) a subordination, non-disturbance and adornment agreement (an *"USDA"*) in favor of a tenant or proposed tenant or (ii) with respect to Areas, a consent and subordination agreement (a *"CPSA"*) for anchor occupants and adjoining landowners, then the Debtors shall have the right to a hearing and to seek appropriate relief from the Court on an expedited basis, including, but not limited, pursuant to section 362(a)(3) of the Bankruptcy Code or for modification of adequate protection; and it is further

ORDERED that the USDA shall be in the form attached to the applicable Adequate Protection Party's Applicable Mortgage Document, or if there is no form USDA attached to an Applicable Mortgage Document, the form USDA attached hereto as *Exhibit 1* (with only such changes as may be necessary to reflect the party names, the applicable property and a description of a Property Document). With respect to the form of USDA attached as *Exhibit 1,* the Debtors will discuss in good faith requests by any Adequate Protection Party to develop standardized modifications for such Adequate Protection Party, provided that any such standardized modifications shall not unreasonably delay or impair the Debtors' leasing activities. The CPSA shall be in the form attached hereto as *Exhibit 2.* For each USDA or CPSA executed and delivered by an Adequate Protection Party, such Adequate Protection Party shall be entitled to a fee in an amount (a) specifically set forth in the Applicable Mortgage Document (excluding any general reimbursement and/or expense provisions) or (b) $500.00; and it is further

ORDERED that the Banks are authorized to honor, process, and pay, to the extent of funds on deposit, any and all prepetition checks, or electronic fund transfer requests in respect of Tenant Obligations, Amendments, and/or Property Issues, whether pre– or postpetition; and it is further

ORDERED that any Bank may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Commencement Date should be honored pursuant to this Order, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein; and it is further

ORDERED that nothing in this Order shall be deemed or construed as (i) an admission as to the validity of any Tenant Obligation, Property Issue, or Property Document; (ii) a waiver of the Debtors' or any party in interest's rights to dispute any such claim; or (iii) authorization or approval to assume any Property Document under section 365 of the Bankruptcy Code; and it is further

ORDERED that notice of the Motion and the Supplement shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that notwithstanding any applicability of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(a) are waived; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

## *EXHIBIT 1*

### Form Subordination, Non–Disturbance and Attornment Agreement

## FORM OF SUBORDINATION, NON–DISTURBANCE AND ATTORNMENT AGREEMENT

**THIS AGREEMENT** is made and entered into as of the date set forth below by and between _____ (*"Tenant"*), _____ (*"Landlord"*) and (*"Lender"*), as follows:

### RECITALS

A.   Lender is the holder of a Mortgage, Deed of Trust or Deed to Secure Debt (the *"Security Instrument"*), which secures or will secure one or more Notes in the aggregate original principal amount of $ _____. The Security Instrument and any other security instruments, executed by the Landlord in favor of Lender, encumber Landlord's fee title or, if applicable, leasehold interest in the real property, together with the buildings and improvements on that property, described as "Exhibit A", which is attached to this document; and

B.   Tenant is the holder of a lease (the *"Lease"*) dated, _____, \_\_\_\_ from Landlord (the *"Lease"*) covering certain premises more particularly described in the Lease (referred to later as the *"Leased Premises"*); and

C.   Tenant, Landlord and Lender desire to confirm their understanding with respect to the Lease and the Security Instrument;

**NOW THEREFORE,** in consideration of the mutual covenants and agreements contained in this instrument, Tenant, Landlord and Lender agree and covenant as follows:

1.   Now and at all times in the future, the Lease and the rights of the Tenant thereunder shall be subject and subordinate to the Security Instrument, and to all renewals, modifications or extensions of that Security Instrument. However, such renewals, modifications and extensions shall be subject and entitled to the benefits of the terms of this Agreement. Lender acknowledges and agrees that Tenant (or its subtenants) have installed or will install certain signs, furnishings, trade fixtures, inventory, equipments and other property (the *"Trade Fixtures"*). Lender covenants and agrees that it has no interest and waives any interest in the Trade Fixtures, or any insurance proceeds or condemnation proceeds or payments, payable in connection therewith, it being expressly understood that the Trade Fixtures shall remain the property of Tenant or its subtenant, which shall not be subject to any lien or security interest of lender against the Leased Premises or other property.

2.   So long as Tenant is not in default in the payment of rent or in Tenant's performance of any of the terms, covenants or conditions of the Lease (beyond any notice period and any period given Tenant to cure such default):

a) Lender shall not diminish nor interfere with Tenant's possession of the Leased Premises, or Tenant's rights and privileges under the Lease or lease renewals, modifications or extensions that may be affected in accordance with any options set forth in the Lease.

b) Tenant's occupancy of the Leased Premises shall not be disturbed, affected or impaired by Lender during the term of the Lease or any such renewals, modifications or extensions of the Lease.

c) Tenant, or any leasehold mortgagee of Tenant (*"Tenant's Mortgagee"*) shall not be named or joined in any action or proceeding brought by lender to enforce any of its rights in the event of default under the Note, Security Instrument, unless such joinder be required by law for effecting those remedies available under the security instruments. Such joinder would ONLY be for the purposes of effecting those remedies, but not for the purpose of terminating the Lease or affecting Tenant's right to possession.

3. Subject to the terms of this Agreement, if the interests of Landlord shall be transferred to and owned by Lender or any other person or entity (*"New Owner"*) by reason of foreclosure or other proceedings or by any other manner, and New Owner succeeds to the interests of the Landlord under the Lease, Tenant shall be bound to New Owner under all of the terms, covenants and conditions of the Lease for the balance of the term remaining and for any extensions or renewals which may be effected in accordance with any option granted in the Lease, with the same force and effect as if New Owner had been the original Landlord under the Lease. Tenant agrees to attorn to New Owner as its Landlord, such attornment to be effective and self-operative without the execution of any further instruments on the part of any of the parties to this Agreement immediately upon New Owner succeeding to the interest of the Landlord under the Lease. The respective rights and obligations of Tenant and New Owner upon such attornment, to the extent of the then remaining balance of the term of the Lease and any such extensions and renewals, shall be and are the same as now set forth in the Lease as if New Owner was originally a party to the Lease. The parties intent is to incorporate the Lease in this Agreement by reference with the same force and effect as if set forth at length in this Agreement.

4. During the period of New Owner's ownership of Landlord's interest in the Lease, Tenant and Tenant's Mortgagee shall have the same remedies against New Owner for the breach of an agreement contained in the Lease that Tenant and Tenant's Mortgagee would have had against the Landlord if New Owner had not succeeded to Landlord's interest; provided, however, that even though provisions in the Lease may be to the contrary, New Owner shall not be:

(a) liable for any default of any prior landlord arising under the Lease (including the Landlord), except where such default (i) is continuing at the time New Owner acquires possession of the Leased Premises and New Owner fails to cure such default after receiving notice thereof or (ii) arises after New Owner has taken possession of the Property;

(b) subject to any offsets, defenses or counterclaims which Tenant may have against any prior landlord arising under the Lease (including the Landlord), except where such offsets or defenses (i) arise out of a default of a prior landlord which is continuing at the time (whether a monetary or non-monetary default) New Owner acquires possession of the Leased Premises and New Owner fails to cure such default after receiving notice thereof or (ii) arise after New

Owner has taken possession of the Property;

(c) bound by any payment of rents or additional rent which Tenant might have paid more than one (1) month in advance (unless otherwise required by the Lease);

(d) bound by any amendment or modification of the Lease made without its consent to the extent its consent was required pursuant to the terms of the Security Instrument or any related loan agreement; or,

(e) liable for any security deposited under the Lease unless such security has been physically delivered to New Owner.

5. Tenant shall, until the Security Instrument is released by Lender, promptly notify Lender of any default, act or omission of Landlord which would give Tenant the right, immediately or after the lapse of a period of time, to cancel or terminate the Lease or to claim a partial or total eviction or to offset rent due thereunder (*"Landlord Default"*). In the event of a Landlord Default, the Tenant shall not exercise any rights available to it until Tenant has given (A) written notice of such Landlord Default to Lender and (B) the opportunity to cure such Landlord Default within the time periods provided for cure by landlord, measured from the time notice is given to Lender. Except as provided in paragraphs 2 and 3 above, Tenant acknowledges that Lender is not obligated to cure any Landlord Default but, if Lender elects to do so, Tenant agrees to accept cure by lender as that of Landlord under the Lease and will not exercise any right or remedy under the Lease for a Landlord Default. Performance rendered by lender of Landlord's behalf is without prejudice to Lender's rights against Landlord under the Security Instrument or any other doc-uments executed by Landlord in favor of Lender in connection with the Loan.

6. The terms "holder of a mortgage" and "Lender" or any similar term in this document or in the Lease shall be deemed to include Lender and any of its successors or assigns, including anyone who shall have succeeded to Landlord's interests by, through or under foreclosure of the Security Instrument, or by deed in lieu of such foreclosure or otherwise.

7. The Landlord has assigned or will assign to Lender all of Landlord's right, title and interest in the Lease by an Assignment of Rents and Leases (*"Rent Assignment"*). If in the future there is a default by the Landlord in the performance and observance of the terms of the Note or Security Instrument, the Lender may, at its option under the Rent Assignment, require that all rents and all other payments due under the Lease be paid directly to Lender. Upon notification to that effect by the Lender to the Landlord and the Tenant, the Landlord HEREBY IRREVOCABLY AUTHORIZES AND DIRECTS the Tenant and the Tenant agrees to pay any payments due under the terms of the Lease to the Lender. Such payments shall constitute payments under the terms of the Lease and Landlord shall have no claim against Tenant by reason of such payments made to Lender. Neither the Rent Assignment nor its implementation shall diminish any obligation of the Landlord under the Lease or impose any such obligations on the Lender.

8. All notices, consents, approvals and requests required or permitted hereunder shall be given in writing and shall be effective for all purposes if hand delivered or sent by (a) certified or registered United States mail, postage prepaid, or (b) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, and by

telecopier (with answer back acknowledged), or (c) electronic mail (provided, however, any notice by electronic mail will be deemed effective as of the date that the sender receives a response from any one required recipient, or from an employee or representative of the Party receiving notice on behalf of such Party, acknowledging receipt (which response may not be an automatic computer-generated response)) addressed as follows (or at such other address and person as shall be designated from time to time by any party hereto, as the case may be, in a written notice to the other parties hereto in the manner provided for in this Section):

If to Tenant:

_____

_____

_____

_____

If to Landlord:

_____

_____

_____

_____

If to Lender:

_____

_____

_____

_____

9.  This Agreement may not be modified, except by a written agreement signed by the parties or their respective successors in interest.  This Agreement shall inure to the benefit of and be binding upon the parties, their successors and assigns. This Agreement is the entire agreement between the parties relating to the subordination and nondisturbance of the Lease, and supersedes and replaces all prior discussions, representations and agreements (oral and written) with respect to the sub-ordination and nondisturbance of the Lease.  This Agreement controls any conflict between the terms of this Agreement and the Lease.  This Agreement shall be governed by the laws of the State in which the Property is located (without giving effect to its rules governing conflicts of laws).  Any provision of this Agreement which is determined by a government body or court of competent jurisdiction to be invalid, unenforceable or illegal shall be ineffective only to the extent of such holding and shall not affect the validity, enforceability or legality of any other provision, nor shall such determination apply in any circumstance or to any party not controlled by such determination.

10.  Notwithstanding anything to the contrary contained in the Lease or in this Agreement, in the event that Lender shall acquire title to the Leased Premises, Lender shall have no obligation, nor incur any liability, beyond Lender's interest, if any, in the Leased Premises.  Tenant shall look exclusively to such interest of Lender, if any, in the Leased Premises for the payment and discharge of any obligations imposed upon Lender under this Agreement or under the Lease and Lender is hereby released or relieved of any other liability under those documents.  Tenant agrees that with respect to any money judgment which may be obtained or secured by Tenant against Lender, Tenant shall look solely to the estate or interest owned by Lender in the Leased Premises and Tenant will not collect or attempt to collect any such judgment (i) from any officer, director, shareholder, partner, employee, agent or representative of Lender or (ii) out of any assets of Lender other than Lender's estate or interest in the Leased Premises or the proceeds from the sale of the estate or interest.

11.  This Agreement may be executed in two or more counterparts, each of which

shall be deemed an original and all of which, together, shall constitute and be construed as one and the same instrument.

[Remainder of Page Left Intentionally Blank]

IN WITNESS WHEREOF, THIS Agreement is executed this _____ day of _____,

"LENDER"

_____

By: _____
Name: _____
Title: _____

STATE OF _____)
　　　　　　　　　) ss.
COUNTY OF _____)

On this _____ day of _____, _____, before me, the undersigned Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed this instrument, on oath stated that he was authorized to execute the instrument, and acknowledged that he is the _____ of, _____ to be the free and voluntary act and deed of said company for the uses and purposes mentioned in the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal. (seal)

_____
NOTARY PUBLIC.

My appointment expires _____

"TENANT"

_____

By: _____
Name: _____
Title: _____

STATE OF _____)
　　　　　　　　　) ss.
COUNTY OF _____)

On this _____ day of _____, _____, before me, the un-

dersigned Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed this instrument, on oath stated that he was authorized to execute the instrument, and acknowledged that he is the _____ of _____, to be the free and voluntary act and deed of said company for the uses and purposes mentioned in the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal. (seal)

_____
NOTARY PUBLIC.

My appointment expires _____

"LANDLORD"

_____

By: _____
Name: _____
Title: _____

STATE OF _____)
　　　　　　　　　) ss.
COUNTY OF _____)

On this _____ day of _____, _____, before me, the undersigned Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed this instrument, on oath stated that he was authorized to execute the instrument, and acknowledged that he is the _____ of _____, to be the free and voluntary act and deed of said company for the uses and purposes mentioned in the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal. (seal)

_____
NOTARY PUBLIC.

My appointment expires _____

## EXHIBIT 2

### Form Consent and Subordination Agreement

FORM OF CONSENT AND SUBORDINATION

_____, a _____, as mortgagee under that certain [Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing] dated _____, _____ and recorded _____, _____ as Document No. _____ in the [_Recording Office_] (as the same may have been or may be amended, modified, supplemented or restated from time to time, the "Mortgage"), hereby approves of and consents to the provisions of the foregoing [_Name of Document_] dated as of _____, _____, by and among _____ and _____, and agrees that the Mortgage is subordinate to the terms and provisions of such document with the same force and effect as though such document were recorded prior to the Mortgage.

_____,

a _____

By: _____

Name: _____

Title: _____

STATE OF _____  )
                   ) ss.
COUNTY OF _____  )

BEFORE ME. the undersigned authority, personally appeared _____, to me known and known to me to be the individual described in and who executed the foregoing instrument as _____ of _____, a _____, and acknowledged to me and before me that he/she executed such instrument on behalf of said _____. and that said instrument is the free act and deed of said _____.

WITNESS my hand and official seal this _____ day of _____, _____.

_____
Notary Public.

My Commission Expires _____